IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN KING,

    Plaintiff,                    No. CIV S-04-1158 MCE KJM P

    vs.

DEPUTY COLEMAN, et al.,

    Defendants.              FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. In his third amended complaint, plaintiff alleges that on May 9, 2003, he was being transported in a San Joaquin County Sheriff's Department van that was not equipped with seat belts when the van hit a curb and the driver braked, throwing the passengers into the air. Deputy Thrasher, one of the transporting deputies, ignored plaintiff's complaints of pain at the scene; Deputy Wolfe who also was present, drove the injured inmates another thirty miles instead of waiting for medical assistance for plaintiff, who was in pain; defendant Dunn, the Sheriff of San Joaquin County at the time, implemented the San Joaquin County Sheriff's Department's policy of not equipping the vans with seatbelts; as a result of the accident, plaintiff suffers pain in his lower back and neck and has migraine headaches as a result of the concussion caused by the accident.

1          Defendants have filed a motion to dismiss, or in the alternative for summary
2  judgment, on the ground that plaintiff has not exhausted his administrative remedies.  They also
3  contend that the complaint fails to state a claim upon which relief can be granted and that
4  plaintiff has not alleged that he suffered injury.
5          Plaintiff has filed a motion for summary judgment.
6  I.  Motion To Dismiss
7       A.  Failure To Exhaust Administrative Remedies
8              The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall
9  be brought with respect to prison conditions under section 1983 of this title, . . . until such
10 administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Conditions of
11 confinement" subject to exhaustion have been defined broadly as "the effects of actions by
12 government officials on the lives of persons confined in prisons."  18 U.S.C. § 3626(g)(2); Smith
13 v. Zachary, 255 F.3d 446, 449 (7th Cir. 2001); see also Lawrence v. Goord, 304 F.3d 198, 200
14 (2d Cir. 2002).  Proper exhaustion of available remedies is mandatory.  Booth v. Churner, 532
15 U.S. 731, 741 (2001); Woodford v. Ngo, ___ U.S. ___, 126 S. Ct. 2378 (2006) (addressing
16 timeliness aspect of proper exhaustion).
17         A motion to dismiss for failure to exhaust administrative remedies prior to filing
18 suit arises under Rule 12(b) of the Federal Rules of Civil Procedure.  Wyatt v. Terhune, 315 F.3d
19 1108, 1119 (9th Cir. 2003).  In deciding a motion to dismiss for a failure to exhaust non-judicial
20 remedies, the court may look beyond the pleadings and decide disputed issues of fact.  Id. at
21 1119-20.  Defendants bear the burden of proving plaintiff's failure to exhaust.  Id. at 1119.
22         Defendants have submitted the declaration of Jamie Clayton, a Sheriff's
23 Lieutenant in the custody division of the San Joaquin County Jail.  Declaration of Jamie Clayton
24 (Clayton Decl.) ¶ 1.  According to Lieutenant Clayton, the custody division of San Joaquin
25 County Sheriff's Department has established a grievance procedure for inmates.  Id. ¶¶ 3-4.  The
26 grievance policy encourages inmates to resolve grievances informally, but if that is not possible,

an inmate may file a grievance on a pre-printed tripartite form. Id. ¶¶ 5-6. Grievances are handled by the housing officer. Id. ¶ 5. If an inmate pursues a grievance, a copy will be placed in the inmate's record of incidents. Id. ¶ 8. Clayton researched plaintiff's inmate file, but did not find a grievance from plaintiff about the accident on May 9, 2003; the only thing she located was a citizen's complaint about the accident, filed September 11, 2003. Id. ¶ 9.

In his opposition, submitted under the penalty of perjury, plaintiff counters that he was never an inmate at San Joaquin County Jail: he was an inmate at Deuel Vocational Institution in Tracy, but was being taken to court in the San Joaquin van. Opposition (Opp'n) at 3. He also avers that he wrote to the San Joaquin County Sheriff's Department, inquiring about "the necessary legal forms" and was informed that he had taken the proper legal course by filing the citizen's complaint. Id. He has attached a copy of a letter from Sgt. Antonio Cruz of the Internal Affairs Division, who observed that plaintiff had filed a claim with the San Joaquin County Board of Supervisors and that this step "appears to be the correct course of action to deal with your situation." Opp'n, unlabeled exhibit, letter dated 11/6/2003. Plaintiff also has attached copies of his claim submitted to the Board of Supervisors and the citizen's complaint he sent to the Sheriff's Department. Opp'n, unlabeled exhibts, claim dated 9/11/2003 & citizen's complaint dated 9/11/2003.

Defendants have not filed a reply to the opposition or otherwise disputed plaintiff's assertion that he was never an inmate at San Joaquin County Jail.

Plaintiff's status raises two questions: Must he satisfy the exhaustion requirement at all? If so, was the San Joaquin County procedure described by Lt. Clayton available for purposes of the PLRA exhaustion requirement?

Under the PLRA, a prisoner is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary

program." 42 U.S.C. § 1997e(h).  At the time plaintiff filed the lawsuit, he was a prisoner,[1] albeit one held in state prison rather than in county jail.  Under the clear language of the PLRA, he must exhaust available administrative remedies before bringing suit.  See, e.g., Gibson v. Brooks, 335 F.Supp.2d. 325, 330 (D. Conn. 2004) (plaintiff was prisoner subject to exhaustion requirement, even though he had been released and was reincarcerated after claim arose and claim related solely to earlier incarceration); compare Grieg v. Goord, 169 F.3d 165, 167 (2d Cir. 1999) (plaintiff not a prisoner for purposes of exhaustion requirement when he was on parole at time of filing suit even though claim arose when he was incarcerated).  Accordingly, plaintiff is required to exhaust available administrative remedies.

There appears to be no case law addressing the question whether an administrative grievance process is available to someone who was not a prisoner of the correctional institution that caused an alleged injury.  Several cases are instructive.

In Rodriguez v. Westchester County Jail Correctional Department, 372 F.3d 485 (2d Cir. 2004), the Court of Appeals found, with little analysis, that plaintiff's transfer beyond the authority of Westchester County meant that administrative remedies for an incident that had occurred at the jail were not available.

Similarly, in Bradley v. Washington, 441 F.Supp.2d 97 (D.D.C. 2006), the plaintiff had been in custody in the District of Columbia jail when his claims arose, but was transferred to federal custody shortly thereafter.  He argued that his transfer rendered the District of Columbia grievance procedures unavailable.  The court agreed, finding that the District's grievance procedures made "no provision for the submission of complaints by prisoners no longer detained by the Department." Id. at 102.  It distinguished those cases that found remedies available when inmates were transferred between facilities of the same department. Id. at 102-03.

---

[1] His change of address and some allegations in his motion for summary judgment suggest that plaintiff has paroled.

In contrast, in <u>Medina-Claudio v. Rodriguez-Mateo</u>, 292 F.3d 31 (1st Cir. 2002), the plaintiff was incarcerated in several facilities of the Puerto Rico Administration of Corrections (AOC) when his claims arose, but before he filed suit, he was transferred first to a facility operated by Wackenhut Corrections Corporation and then to the Metropolitan Detention Facility (MDC), a federal correctional facility. While he was at MDC, he filed suit against the AOC. The court found that plaintiff had not exhausted available administrative remedies because "[n]othing in the regulation explicitly prevents Medina-Claudio from filing an administrative complaint while temporarily housed at another facility." <u>Id</u>. at 35.

Although Lt. Clayton has explained the San Joaquin County jail grievance policy, defendants have not attached a copy of the policy to her declaration. From Lt. Clayton's description, it appears as though the grievance procedure is strictly internal, for it requires an inmate to attempt to resolve the problem informally with "staff." Clayton Decl. ¶ 5. If informal resolution is not possible, then an inmate may submit a formal grievance on the jail's preprinted, triplicate form. <u>Id</u>. ¶¶ 5-6. The Inmate Orientation and Rule Book includes information on the jail procedure. <u>Id</u>. ¶ 7. Nothing in Lt. Clayton's declaration suggests that someone who is an inmate of the Department of Corrections and Rehabilitation, whose only contact with San Joaquin County Jail is a ride in the jail van, would have access to the orientation handbook, the grievance form, or the grievance process. Because the defendants have not provided a copy of jail regulations, policies or procedures about the grievance process, the court cannot determine whether someone like plaintiff, who was never an inmate at San Joaquin County jail, would or would not have had access to the grievance process. Accordingly, this case is more like <u>Rodriguez</u> and <u>Bradley</u> than <u>Medina-Claudio</u>. Defendants have not borne their burden of showing that administrative remedies were available to plaintiff.

B. <u>Failure To State A Claim</u>

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, <u>Hospital Bldg. Co. v. Rex Hospital Trustees</u>, 425 U.S. 738, 740

5

(1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. . . ." Bell Atlantic Corporation v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1964-65 (2007).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). To withstand a motion to dismiss, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic, 127 S.Ct. at 1965. Nevertheless, "specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2200 (2007) (internal quotation omitted).

       1. The Physical Injury Requirement Of The PLRA

Defendants argue that plaintiff cannot plead an Eighth Amendment claim because his injuries, which they characterize as frequent neck pain and migraines, do not satisfy the "physical injury" requirement of 28 U.S.C. § 1997e(e), which provides that "no federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Motion to Dismiss (MTD) at 10.

In Oliver v. Keller, 289 F.3d 623, 627-28 (9th Cir. 2002), the Ninth Circuit determined that a claim for mental and emotional injury could not be maintained without a showing of some injury, which need not be significant but must be more than de minimis injury. Plaintiff does not appear to be seeking damages simply for mental and emotional injury, but

rather for the physical injury itself, which he describes as "a severe and permanent disability to his lower back, frequent neck pain and migraines; due to a concussion, pain and suffering. . . ." Compl. ¶ 3. Thus, because plaintiff seeks recovery for more than mental and emotional injury and because his claim of severe and permanent disability satisfies whatever injury requirement exists, this portion of defendants' motion is frivolous.

### 2. Eighth Amendment Violation

#### A. Defendants Thrasher and Wolfe

Plaintiff alleges that defendants Thrasher and Wolfe ignored his injuries after the accident and chose to drive plaintiff away from the scene without ensuring that he received prompt medical care when he needed it. Compl. ¶¶ 6-7. Defendants argue that plaintiff has not shown deliberate indifference because he has not described the unnecessary and wanton infliction of pain. MTD at 12.

In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that inadequate medical care did not constitute cruel and unusual punishment cognizable under section 1983 unless the mistreatment rose to the level of deliberate indifference to serious medical needs. In the Ninth Circuit,

> the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations & quotations omitted); see also McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).

7

1    There is no Eighth Amendment violation if any delay in treatment is not harmful.
2 Shapely v. Nevada Bd. Of State Prison Com'rs., 766 F.2d 404, 407 (9th Cir. 1985).  However,
3 unnecessary continuation of pain may constitute the "harm" necessary to establish an Eighth
4 Amendment violation from delay in providing medical care.  McGuckin, 974 F.2d at 1062.
5    Here again, defendants' argument is not well taken.  Plaintiff clearly alleges that
6 defendants Thrasher and Wolfe ignored his request for medical care and complaints of pain,
7 secured medical care for another inmate on the scene, and drove for an additional thirty miles
8 while he was in severe pain.  This adequately pleads an unnecessary continuation of pain and
9 delay resulting in disability so as to survive a motion to dismiss.

10    B.   Defendants Dunn And San Joaquin County Sheriff's Department

11    These two defendants argue they cannot be liable because they are supervisors
12 who were not involved in the accident in which plaintiff was injured, and because plaintiff has
13 not alleged any policy or practice that contributed to the violation of his civil rights.  MTD at 13.
14 This argument is frivolous as well.

15    Plaintiff alleges that these defendants are liable because the absence of seatbelts in
16 the van was the result of the policy implemented by the Sheriff's Department and then-Sheriff
17 Dunn.  Compl. ¶ 8.  Plaintiff also alleges that he was injured because there were no seatbelts in
18 the van and he was "thrown in the air" during the accident.  This satisfies the pleading
19 requirements for municipal liability under Monell v. New York City Dept. Of Social Services,
20 436 U.S. 658 (1978).  See Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992); cf. Brown v.
21 Missouri Department of Corrections, 353 F.3d 1038, 1040 (8th Cir. 2004) (supervisory personnel
22 not liable for injuries suffered when plaintiff was prevented from fastening his seatbelt in prison
23 van because there was no allegation of "tacit authorization or a policy directive that inmates not
24 be seatbelted when being transported").

25 /////

26 /////

II. Plaintiff's Motion For Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

1  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
2  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
3  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
4  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
5  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
6  1436 (9th Cir. 1987).

7       In the endeavor to establish the existence of a factual dispute, the opposing party
8  need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
9  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
10 versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary
11 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
12 genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
13 committee's note on 1963 amendments).

14      In resolving the summary judgment motion, the court examines the pleadings,
15 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
16 any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,
17 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the
18 court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587.
19 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
20 produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen
21 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
22 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
23 show that there is some metaphysical doubt as to the material facts. . . . Where the record taken
24 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
25 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).
26 /////

Plaintiff's motion notes his attempts to settle this case short of litigation, describes his injuries and notes that he has not been able to obtain complete reports about the accident. He has not identified those portions of the record that show the absence of a genuine issue of material fact.

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (docket no. 29) be denied; and

2. Plaintiff's motion for summary judgment (docket no. 40) be denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 10, 2007.

_____
U.S. MAGISTRATE JUDGE

2

king1158.57