IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN KING,

    Plaintiff,

vs.

SAN JOAQUIN COUNTY
SHERIFF'S DEPARTMENT, et al.,

    Defendants.

No. CIV S-04-1158 GEB KJM P

<u>FINDINGS & RECOMMENDATIONS</u>

    Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. He alleges he was injured when a San Joaquin County Sheriff's prisoner transport van not equipped with seatbelts hit a curb and then braked abruptly. He also alleges that although he requested medical treatment at the scene, no one responded to his request. Defendants have filed a motion for summary judgment.

I. <u>Summary Judgment Standards Under Rule 56</u>

    Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

/////

1

Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On July 20, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

II. Preliminary Matters

In support of their motion, defendants have submitted excerpts of plaintiff's deposition and medical records from Deuel Vocational Institution (DVI), with counsel's declaration averring that the materials are true and correct copies of the deposition and the records. This presentation is insufficient to satisfy the Federal Rules of Evidence.

A court may consider only admissible evidence in ruling on a motion for summary judgment. Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).

> Authentication is a "condition precedent to admissibility," and this condition is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims. Fed. R. Evid. 901(a) . . . [U]nauthenticated documents cannot be considered in a motion for summary judgment.

Id.; Hal Roach Studios v. Richard Feiner and Company, Inc., 896 F.2d 1542, 1550 (9th Cir. 1989); cf. Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir.1987) (unauthenticated documents may not be relied upon to defeat a motion for summary judgment).

Portions of deposition testimony may be properly authenticated by attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted; "[i]t is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a true and correct copy." Orr, 285 F.3d at 774. Counsel has submitted a copy of the entire deposition transcript as required by the local rules, but there is no indication the transcript has been signed by the court reporter; it will not be considered in support of the motion for summary judgment. Pavone v. Citicorp Credit Services, 60 F.Supp.2d 1040, 1045 (S.D. Cal. 1997), aff'd, 172 F.3d 876 (9th Cir. 1999).

Defendants' attempts to authenticate a variety of medical records through counsel's declaration is similarly unavailing: "A document can be authenticated [under Rule 901(b)(1)] by a witness who wrote it, signed it, used it, or saw others do so." Orr, 285 F.3d at 774 n.8. However, documents may be authenticated "by appearance, contents, substance,

internal patterns or other distinctive characteristics, taken in conjunction with circumstances." Fed. R. Ev. 901(b)(4). Defendants and plaintiff all have submitted a copy of a CDC 7219, a "medical report of injury or unusual occurrence" dated May 9, 2003, which identifies the subject of the report as plaintiff by both his name and CDC number; the CDC number on the report corresponds to the CDC number on the pleadings. Mem. P. & A. in Supp. Mot. For Summ. J. (MSJ), Declaration of William Johnson (Johnson Decl.), Ex. B; Opposition (Opp'n) at 24.[1] In addition, plaintiff has provided copies of additional medical records; the court finds those containing his name and CDC number to be authenticated by their contents, substance and distinctive characteristics. Opp'n at 25-26, 29-30, 32-33, 36; see Goedecke v. Vinivan, 2008 WL 2668768, *3-4 (D. Ariz. 2008).

Plaintiff also has submitted materials that the court will not consider, namely two unsworn statements from Jason Murray, who "declare[s] that the following statement is true and correct to the best of my knowledge," or simply states that another account is "to the best of my recollection." Opp'n at 17, 19. This does not satisfy the requirements of Rule 56(e)(1) of the Federal Rules of Civil Procedure or Title 28 U.S.C. § 1746. Barraza v. United States, 526 F.Supp.2d 637, 642 (W.D. Tex. 2007).

III. Facts

On May 9, 2003, Coleman, a San Joaquin County Sheriff's Deputy, was the driver of Sheriff's Department bus 02-219, which was transporting plaintiff and some other inmates from Deuel Vocational Institution (DVI); Thrasher, also a sheriff's deputy, was a passenger. Declaration of Bruce Thrasher (Thrasher Decl.) ¶¶ 2-3; Declaration of Russell Coleman (Coleman Decl.) ¶¶ 2-3; Third Amended Complaint (TAC) ¶ 2.[2] The bus was not equipped with

---

[1] The court references the page numbers assigned by its CM/ECF system.

[2] Because the complaint was submitted under the penalty of perjury, the court treats it as a declaration for purposes of summary judgment but only to the extent that the observations are within plaintiff's knowledge and sufficiently detailed. Moran v. Selig, 447 F.3d 748, 759 n.16 (9th Cir. 2006).

5

seatbelts for the passengers; seatbelts are not required by state or federal law or by any policy or procedure of the San Joaquin County Sheriff's Department. Declaration of Baxter Dunn (Dunn Decl.) ¶ 3; Thrasher Decl. ¶ 6; Coleman Decl. ¶ 6. At approximately 4 p.m., the bus was in a single-vehicle accident. Coleman Decl. ¶ 3; Thrasher Decl. ¶ 3; TAC ¶ 2. According to Coleman and Thrasher, when Coleman stopped the bus, only inmate Johnson said he was injured. Coleman Decl. ¶¶ 3-4; Thrasher Decl. ¶¶ 3-4. Plaintiff avers that he complained of severe pain at the scene, but Thrasher ignored him. TAC ¶ 6.

San Joaquin County Jail policy dictated that officers not enter the passenger portion of the bus unless the bus was itself in a secured area. Dunn Decl. ¶ 4; Thrasher Decl. ¶ 3; Coleman Decl. ¶ 3. Accordingly, Coleman drove the bus approximately fifty feet into a secure portion of the jail's transportation area where the inmates were taken off the bus. Coleman Decl. ¶¶ 3-4; Thrasher Decl. ¶¶ 3-4.

Nurse Doronio was called to the jail's transportation area where she examined inmate Thomas Johnson, who complained of pain in his ribs after falling from his seat in the bus. Declaration of Ramil Doronio (Doronio Decl.) ¶¶ 2-3. Doronio concluded that Johnson should be evaluated at a hospital and so arranged transportation to the emergency room. Id. ¶ 3; TAC ¶ 7.

After finishing with Johnson, Doronio asked if anyone else needed medical attention, but no one responded. Doronio Decl. ¶¶ 3-4; Declaration of Larry Wolf (Wolf Decl.) ¶ 4; Thrasher Decl. ¶ 4. According to Coleman, the rest of the inmates declined medical attention and asked to be returned to DVI. Coleman Decl. ¶ 4. Plaintiff states, however, that he "did not see any doctor or nurse on the scene." TAC ¶ 7.

Deputy Coleman had problems gaining access to the computer system, so defendant Wolf prepared the incident report. Wolf Decl. ¶ 3; Coleman Decl. ¶ 5. Coleman remained at the jail while Thrasher and Wolf took the inmates back to DVI, a distance of about thirty miles. Coleman Decl. ¶ 5; Thrasher Decl. ¶ 5; TAC ¶ 7.

1  When he reached DVI, plaintiff sought medical attention, explaining to the nurse
that he had lower back discomfort and an injured ankle; the nurse indicated plaintiff did not have
severe distress. Johnson Decl., Ex. B; Opp'n at 24. Plaintiff was given Motrin for pain.
Opp'n at 25. A day later, he was given Darvocet for back pain. Id. at 26. He continued to
complain of lower back pain in subsequent months and, by January 2004, was deemed to be
"permanently mobility impaired." Id. at 34-36.

IV. Seatbelts

A prisoner's Eighth Amendment rights are violated when officials are deliberately indifferent to a prisoner's need for safety. Farmer v. Brennan, 511 U.S. 825, 833 (1994). Federal courts have found that a prison's or jail's failure to equip a van or bus with seatbelts for the prisoners does not rise to the level of deliberate indifference as a matter of constitutional law. Spencer v. Knapheide Truck Equipment Co., 183 F.3d 902, 906 (8th Cir. 1999) ("we do not think that the Board's purchase of patrol wagons without safety restraints nor its manner of transporting individuals in these wagons were policies that obviously presented a "substantial risk of serious harm"); Carrasquillo v. City of New York, 324 F.Supp.2d 428, 437 (S.D.N.Y. 2004) ("'a failure to seatbelt does not, of itself, expose an inmate to risks of constitutional dimension' because the 'eventuality of an accident is not hastened or avoided by whether an inmate is seatbelted.'").

Plaintiff suggests the defendants ignored state law requiring seatbelts for passengers, which shows their deliberate indifference to his safety. Opp'n at 3-4.[3] The California Vehicle Code incorporates the state Legislature's determination that "a mandatory

---

[3] Defendants argue plaintiff has waived his claim stemming from the absence of seatbelts because in his objections to earlier findings and recommendations, plaintiff said he was "not arguing the seatbelts in the complaint any longer. . . ." MSJ at 5. Defendants identify the page and line number for this quote, but do not identify the document that contains it either by date or by docket number. See Bias v. Moynihan, 508 F.3d 1212, 1219 (9th Cir. 2007) (no duty to comb record to locate evidence helpful to a party). Even if the court reaches the merits of plaintiff's seatbelt claim, as it does here, plaintiff cannot prevail.

seatbelt law will contribute to reducing highway deaths and injuries . . . ." Cal. Veh. Code § 27315(a). Nevertheless, the law contains a number of exceptions:

> . . . This section also does not apply . . . to a passenger in a seat behind the front seat of an authorized emergency vehicle as defined in paragraph (1) of subdivision (b) of Section 165 operated by the public employee, unless required by the agency employing the public employee.

Cal. Veh. Code § 27315(g). The Vehicle Code in turn defines an emergency vehicle as:

> (b) Any publicly owned vehicle operated by the following persons, agencies, or organizations:
>
> (1) Any federal, state, or local agency, department, or district employing peace officers as that term is defined in Chapter 4.5 (commencing with Section 830) of Part 2 of Title 3 of the Penal Code, for use by those officers in the performance of their duties.

Cal. Veh. Code § 165(b)(1). Finally, under California Penal Code section 830.1(a), sheriffs and deputy sheriffs are peace officers. Moreover, plaintiff has not rebutted defendants' evidence that San Joaquin County did not have a policy, practice or custom of equipping its vans and buses with seatbelts.

Accordingly, plaintiff has not shown that the defendants were deliberately indifferent as a result of ignoring law or policy, or otherwise demonstrated the failure to equip the van with seatbelts violated his constitutional rights. Defendants are entitled to summary judgment on this claim.

V. <u>The Accident Itself</u>

Although plaintiff and the defendants describe the accident differently, the differences do not preclude summary judgment for the defendants here. <u>Compare</u> Coleman Decl. ¶ 3 ("I nudged the curb. . . . ) <u>and</u> TAC ¶ 2 (Coleman "was speeding and driving a mini bus recklessly. . . he lost control, hit a curb and ran down a hill and hit something; he then slammed on the brakes causing plaintiff . . . to be thrown in mid air. . . .").

To state a claim under the civil rights act, a plaintiff must allege that a constitutional right was violated by a person acting under color of state law. <u>West v. Atkins</u>,

487 U.S. 42, 48 (1988). Neither negligence nor gross negligence translates to a deprivation under the due process clause, even if it causes injury. Daniels v. Williams, 474 U.S. 327, 331 (1986) (no violation of civil rights when prisoner injured himself by slipping on pillow left on the floor); Farmer, 511 U.S. at 835-36.

> [T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone with state authority causes harm.

County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998). The Supreme Court has observed that the Fourteenth Amendment was not intended to provide a constitutionally-based cause of action to "any party who is involved in nothing more than an automobile accident with a state official. . . ." Parratt v. Taylor, 451 U.S. 527, 544 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986). Defendants are entitled to summary judgment on this ground.

## VI. Medical Care

In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that inadequate medical care did not constitute cruel and unusual punishment cognizable under section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious medical needs."

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations & quotations omitted); see also McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997). A medical

need is serious if failure to treat the condition could cause further significant injury or the unnecessary and wanton infliction of pain. McGuckin, 974 F.2d at 1059. There is no Eighth Amendment violation if any delay in treatment is not harmful. Shapely v. Nevada Bd. Of State Prison Com'rs., 766 F.2d 404, 407 (9th Cir. 1985). However, unnecessary continuation of pain may constitute the "harm" necessary to establish an Eighth Amendment violation from delay in providing medical care. McGuckin, 974 F.2d at 1062.

Whether plaintiff sought medical care at the scene of the action is disputed, but ultimately not material. Defendants argue there is no Eighth Amendment violation because plaintiff received medical attention for his complaint of mild lower back discomfort when he arrived back at DVI, at 5:40 p.m. Johnson Decl., Ex. B (medical report of injury indicating "time seen" as 1740). Plaintiff has presented nothing suggesting the delay of approximately an hour and a half had any impact on the course of treatment for his injury; nothing in the record shows there would have been a significantly different outcome had plaintiff been treated at 4:00 p.m. rather than at 5:40 p.m. or that his condition was exacerbated by the delay. This aspect of plaintiff's claim also does not state an Eighth Amendment violation. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990) (several day delay in fixing broken pin in shoulder not an Eighth Amendment violation "considering that the only remedy immediately available was a prescription for painkillers").

The infliction of pain may constitute an Eighth Amendment violation even if a delay in treatment does not impact further treatment. McGuckin, 974 F.2d at 1060; Gutierrez v. Peters, 111 F.3d 1364, 1372 (7th Cir. 1997) ("delays in treating painful medical conditions that are not life-threatening can support Eighth Amendment claims"); Brown v. Hughes, 894 F.2d 1533 (11th Cir. 1990) (six hour delay in treating painful broken foot states an Eighth Amendment claim). Without downplaying the pain that plaintiff may have suffered, the court cannot find the delay of less than two hours -- a period of time anyone might have to wait in an
/////

emergency room for treatment of back pain stemming from an accident – sufficiently long so as to require a jury's resolution of plaintiff's Eighth Amendment claim.

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (docket no. 58) be granted and judgment be entered in defendants' favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 4, 2009.

_____
U.S. MAGISTRATE JUDGE

2

king1158.